UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BETTYANN RACE,

               Plaintiff,

v.                                                         1:14-CV-1357
                                                        (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS         PETER M. MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.              SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 13.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Bettyann Race ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 22, 1969. (T. 156.) She completed high school. (T. 171.) Generally, Plaintiff's alleged disability consists of sarcoidosis, depression, knee replacement, and migraine headaches. (T. 171.) Her alleged disability onset date is March 14, 2012. (T. 61.) Her date last insured is December 31, 2015. (T. 61.) She previously worked in animal care, in a factory, in retail and as a taxi driver. (T. 159.)

### B. Procedural History

On July 6, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 156.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 21, 2013, Plaintiff appeared before the ALJ, Mary Sparks. (T. 31-60.) On January 7, 2014, ALJ Robert Wright issued a written decision for ALJ Sparks, finding Plaintiff not disabled under the Social Security Act. (T. 9-30.) On September 10, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-24.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015 and Plaintiff had not engaged in substantial gainful activity since March 14, 2012. (T. 14.) Second, the ALJ found that Plaintiff had the severe impairments of mild facet arthropathy of the lumbar spine; degenerative disc disease at the C5-6, C6-7, L4-5, and L5-S1 disc levels; spondylosis without myelopathy of the cervical spine; sarcoidosis; status post total right knee impairment; and a depressive disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-18.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> Lift and carry 10 pounds occasionally; stand and walk for [two] hours during a workday; sit for [six] hours during a workday; requires the option to sit, stand, or walk alternatively at will provided that she is not off task more than 10% of the workday; can never climb ladders, ropes, and scaffold; can never use right lower extremity for operating foot controls; can crouch no more than 5% of the work period; can stoop no more than 5% of the work period; can never kneel or crawl; can be exposed to more than 5% of the work period to irritants such as fumes, odors, dust, and poorly ventilated areas; can climb stairs and ramps no more than 5% of the work period; and is limited to simple repetitive tasks in low stress occupations defined as those having no more than occasional decision making required and nor more than occasional changes in the work setting.

(T. 18.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence and was inconsistent with his findings. (Dkt. No. 10 at 3-5 [Pl.'s Mem. of Law].)[1] Second, and lastly, Plaintiff argues the vocational expert ("VE") testimony was inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"). (*Id.* at 5-7.)

## B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly assessed Plaintiff's RFC. (Dkt. No. 11 at 5-12 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly relied on VE testimony that there were a significant number of jobs in the national economy that Plaintiff could perform. (*Id.* at 12-14.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

---

[1] The pages of Plaintiff's brief are not numbered; therefore, this report and recommendation will refer to the page numbers assigned to the brief by the court's electronic filing system ("CM/ECF").

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's Mental RFC Analysis

An RFC is the most Plaintiff can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.925(a)(1). In formulating an RFC, the ALJ will base his determination on all the relevant evidence in Plaintiff's case record. *Id.* In assessing Plaintiff's mental RFC, the ALJ will first assess the nature and extent of Plaintiff's mental limitations and restrictions and then determine Plaintiff's RFC for work activity on a

6

regular and continuing basis. *Id.* at §§ 404.1545(c), 416.925(c). A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce Plaintiff's ability to do past work and other work. *Id.*

Plaintiff argues the ALJ's mental RFC determination failed to include specific limitations pertaining to Plaintiff's ability to interact appropriately with others. (Dkt. No. 10 at 4 [Pl.'s Mem. of Law].)[2] Plaintiff specifically argues the ALJ's decision was internally inconsistent because the ALJ found, at step three, that Plaintiff had moderate difficulties in social functions; however, the ALJ's RFC determination did not explicitly include this limitation. (*Id.*) For the reasons stated herein, the ALJ's mental RFC determination was proper, not internally inconsistent, and supported by substantial evidence.

It is well established that a step three determination is not an RFC assessment, but instead is used to rate the severity of mental impairment. SSR 96-8p, 1996 WL 374182 (July 2, 1996); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Skiba v. Covlin*, No. 3:13-CV-1361, 2015 WL 1780633, at *6 (N.D.N.Y. April 20, 2015); *Huestis v. Comm'r of Soc. Sec.*, No. 2:13-CV-201, 2014 WL 4209927, at *2 (D. Vt. Aug. 25, 2014). Therefore, a determination made at step three need not carry over verbatim to the ultimate RFC determination because the two determinations require their own distinct analysis and conclusion.

---

[2] Plaintiff does not argue the ALJ erred in his physical RFC determination. (Dkt. No. 10.)

7

The ALJ's determination at step three that Plaintiff had "moderate" difficulties in social functioning was not inconsistent with the ALJ's ultimate RFC determination. At steps two and three of the sequential process the ALJ utilized the "special technique" to evaluate Plaintiff's mental impairments to determine whether or not her impairments met or equaled a Listing. (T. 16-18.)[3] The ALJ accurately stated at step three that "[t]he limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (T. 18.) *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (stressing that the "special technique" described in 20 C.F.R. § 404.1520a is not an RFC assessment, and further, the mental RFC assessment used at steps four and five "requires a more detailed assessment"). Therefore, the ALJ did not commit legal error in formulating an RFC that did not contain exact verbiage of limitations found at steps two and three because "paragraph B" findings are not RFC findings.

---

[3] In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler,* 546 F.3d at 265–66. Plaintiff does not argue that the ALJ erred in his step two or three analysis.

The ALJ's mental RFC was supported by substantial evidence. In making his RFC determination, the ALJ relied on the medical opinion provided by consultative examiner, Neil Berger, Ph.D. (T. 21.) On September 21, 2012, Dr. Berger opined Plaintiff was capable of following and understanding simple directions and instructions; could perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently and make appropriate decisions. (T. 646.) He further opined Plaintiff could not relate adequately with others or appropriately deal with stress. (*Id.*) The ALJ reasoned that Plaintiff's testimony regarding her social isolation was not supported by her own reported activities that she was able to drive, use public transportation, had a good relationship with her mother, and was able to go shopping. (T. 21.)

Plaintiff underwent two other mental examinations at the bequest of the Commissioner. On February 7, 2011, Brett T. Hartman, Psy.D., opined, in part, that Plaintiff had "mild difficulty" relating adequately with others. (T. 363.) On February 15, 2011, H. Ferrin, a non-examining State agency examiner, opined Plaintiff could understand and follow directions, sustain attention and concentration for tasks, respond and relate adequately to others, and adapt to changes. (T. 387.) On September 15, 2011, consultative examiner, Kerry Brand, Ph.D., opined, in part, that Plaintiff would have moderate difficulty relating adequately with others. (T. 524.) On October 21, 2011, non-examining State agency medical consultant, M. Marks, opined that based on Dr. Brand's evaluation and the medical evidence in the record at that time, Plaintiff was capable of following directions, sustaining attention and concentration, responding and relating adequately to others, and adapting to change. (T. 552.) Dr. Marks provided

9

another assessment on September 28, 2012. (T. 668.) Therein he opined that Plaintiff could follow directions, sustain attention and concentration, respond and relate adequately to others, and adapt to changes. (*Id.*) Therefore, the ALJ's mental RFC determination was supported by substantial evidence in the record, namely the opinions of Drs. Berger and Marks.

In addition, any error the ALJ may have made was harmless. A finding of moderate limitations in social functioning does not preclude the ability to perform unskilled work. The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *Saxon v. Colvin*, No. 13-CV-165, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment.").

The Second Circuit has held that an ALJ's failure to incorporate certain non-exertional mental limitations is harmless error if the medical evidence demonstrates that a plaintiff can engage in simple, routine tasks or unskilled work despite limitations or the hypothetical posed to a vocational expert ("VE") otherwise implicitly accounted for a plaintiff's limitations. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). As discussed supra, the medical evidence here established that Plaintiff was capable of performing simple, routine tasks and unskilled work despite limitations in social functioning.[4]

In sum, the ALJ did not err in failing to explicitly account for social functioning limitations in his mental RFC determination where he found Plaintiff had "moderate" limitations in social functioning at step three because an analysis at steps two and three are not an RFC analysis. Further, substantial evidence supported the ALJ's mental RFC determination. In the alternative, any error the ALJ may have committed in failing

---

[4] Failure to explicitly include social limitations was also harmless in this case because even had the ALJ included moderate social limitations, Plaintiff would be able to perform two of the three occupations identified by the VE. The VE testified that based on the ALJ's hypothetical, which ultimately became his RFC determination, Plaintiff could perform the occupations of document preparer (DOT 249.587-018) with 44,854 jobs in the national economy and 3,379 jobs in the state economy; of a cutter and paster of press clipping (DOT 249.587-014) with 14,806 jobs in the national economy and 1,116 jobs in the state economy; and as a telephone quotation clerk (DOT 237.367-046) with 3, 422 jobs in the national economy and 301 jobs in the state economy. (T. 54-55.)

Every occupation requires a plaintiff to function to some degree in relation to people. The DOT provides a code, numbered 0-8, for the type of interaction with people an occupation requires. SCODICOT App. E. The code "8" is titled "taking instructions-helping" and is described as "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DOT App. B. According to the DOT, the occupations of document preparer and cutter and paster are code 8 and the degree of relation to people is "not significant." DOT 249.587-018, DICOT 249.587-014. The occupation of telephone quotation clerk entails a code "6- speaking, signaling" and requires "significant" relation to people. DOT 237.367-046. Therefore, even if Plaintiff could not perform the occupation of telephone quotation clerk because it requires "significant" relation to people, Plaintiff could perform the other two occupations which are "not significant" in the area of relation to people and comprise of a significant number of jobs in the national economy which Plaintiff could perform.

to explicitly account for Plaintiff's "moderate" limitations in social functioning was harmless because moderate limitations do not preclude Plaintiff from performing the basic mental demands of unskilled work, and the ALJ's determination passed the test laid out in *McIntyre*.

### B. The ALJ's Step Five Determination

At step five of the sequential process, the burden shifts to the ALJ to establish that there are a significant number of jobs in the national economy that Plaintiff could perform based on her RFC, age, education, and past relevant work. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c); *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004)*; Edwards v. Astrue*, 07-CV-0898, 2010 WL 3701776, at *12 (N.D.N.Y. Sept. 16, 2010). The ALJ can usually establish that there is other work that Plaintiff can perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from non-exertional limitations that significantly limit her employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]); *accord, Wanzo v. Comm'r,* 05-CV-1521, 2008 WL 3925542, *4 (N.D.N.Y. Aug. 20, 2008). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.' " *Baldwin*, 2009 WL 4931363, at *27 (quoting *Bapp*, 802 F.2d at 606).

Here, Plaintiff had both exertional and non-exertional limitations, and therefore, the Grids "[were] to be used as a framework in conjunction with other evidence, such as the testimony of a vocational expert, to guide the [ALJ's] decision." *Wanzo,* 2008 WL 3925542 at *4 (citing 20 C.F.R. § 404.1569a(d); *Bapp,* 802 F.2d at 606). The ALJ here relied on VE's testimony regarding the existence of jobs in the economy that Plaintiff could perform in deciding whether disability exists. *Wanzo,* 2008 WL 3925542 at *4 (citing *Butts,* 388 F.3d at 384).

Here, the ALJ provided a hypothetical to the VE that included Plaintiff's abilities and restrictions set forth in the RFC to determine whether Plaintiff could perform other existing work in the national economy. (T. 53-55.)[5] The VE testified that Plaintiff could perform unskilled jobs that existed in significant numbers in the national economy, including the occupations of document preparer (DOT 249.587-018) with 44,854 jobs in the national economy and 3,379 jobs in the state economy; of a cutter and paster of press clipping (DOT 249.587-014) with 14,806 jobs in the national economy and 1,116 jobs in the state economy; and as a telephone quotation clerk (DOT 237.367-046) with 3, 422 jobs in the national economy and 301 jobs in the state economy. (T. 54.)

Plaintiff argues that the ALJ failed to reconcile a conflict between the VE testimony and the DOT because the occupations of document preparer and telephone quotation clerk have a reasoning level of three. (Dkt. No. 10 at 5-7.)[6] Plaintiff argues

---

[5] Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

[6] DOT reasoning level of three requires a plaintiff to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702.

13

that "certainly" a DOT reasoning level of three is inconsistent with an RFC limitation to simple, repetitive tasks in a low stress occupations with having no more than occasional decision making required and more than occasional changes in the work setting.  (*Id.* at 7.)  At the hearing, the ALJ asked the VE to indicate any point where her testimony conflicted with the DOT in accordance with SSR 00-4p.  (T. 49.)  The VE did not indicate during the hearing that her testimony conflicted with the DOT.  (T. 49-58.)

Contrary to Plaintiff's assertion, reviewing courts have held that jobs with DOT reasoning levels of three are compatible with limitations to simple and low stress work. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013) (holding that reasoning levels of two and three are not inconsistent with a limitation to short, simple instructions); *Reynolds v. Comm'r of Soc. Sec.*, No. 1:11-CV-0778, 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012) (holding that a limitation to simple work does not preclude a job with a reasoning level of two or three); *Cross v. Astrue*, No. 08-CV-0425, 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) (finding no error in the ALJ's conclusion that a plaintiff limited to simple, low stress, entry-level work, with no complex decision-making, could perform jobs with a reasoning level of two or three).  Therefore, a DOT reasoning level of three is not inconsistent with the ability to perform simple, routine, repetitive work and the ALJ did not err in his step five determination.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 24, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge